UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------X
MARIE GUERRERA TOOKER,

                        Plaintiff,

                                            <u>MEMORANDUM & ORDER</u>
            -against-                       15-CV-2430(JS)(ARL)

SALVATORE GUERRERA, QUEST VENTURES, LTD.,
DAVID DEROSA, DIRECTIONAL LENDING LLC,
DAVID REILLY, TOWN OF RIVERHEAD POLICE
DEPARTMENT, SOCIETY FOR PREVENTION OF
CRUELTY TO ANIMALS, CHILD PROTECTIVE
SERVICES, JOHN AND JANE DOES 1-100,

                        Defendants.
--------------------------------------X

APPEARANCES
For Plaintiff:              Marie Guerrera Tooker, <u>pro</u> <u>se</u>
                           1040 Flanders Road
                           Flanders, NY 11901

For Defendants:
Salvatore Guerrera         Raymond R. Grasing, Esq.
and Quest Ventures         Grasing and Associates, P.C.
                           99 Smithtown Blvd., Suite 6
                           Smithtown, NY 11787

David DeRosa and
Directional Lending LLC    Christopher H. Thompson, Esq.
                           Law Offices of Christopher Thompson
                           33 Davison Lane East
                           West Islip, NY 11795

David Reilly               Daniel K. Cahn, Esq.
                           Cahn & Cahn, LLP
                           22 High Street, Suite #3
                           Huntington, NY 11743

Town of Riverhead          Daniel P. Barker, Esq.
Police Department          Christopher B. Abbott, Esq.
                           Smith, Finkelstein, Lundberg,
                             Isler and Yakaboski, LLP
                           456 Griffing Avenue
                           Riverhead, NY 11901

Society for Prevention
of Cruelty to Animals      David Charles Blaxill, Esq.
                           Hardin Kundala McKeon & Poletto P.A.
                           110 William Street
                           New York, NY 10038

Child Protective
Services                   Brian C. Mitchell, Esq.
                           Suffolk County Attorney
                           100 Veterans Memorial Highway
                           P.O. Box 6100
                           Hauppauge, NY 11788

SEYBERT, District Judge:

Plaintiff Marie Guerrera Tooker ("Plaintiff") commenced this action asserting claims pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 et. seq., against defendants Salvatore Guerrera ("Guerrera"), Quest Ventures, Ltd. ("Quest"), David DeRosa ("DeRosa"), Directional Lending LLC ("Directional"), David Reilly ("Reilly"), Town of Riverhead Police Department (the "Police Department"), Society for Prevention of Cruelty to Animals ("SPCA"), and Child Protective Services ("CPS" and collectively, "Defendants"). Presently pending before the Court are the following motions: (1) DeRosa and Directional's motion to dismiss (Docket Entry 9); (2) Reilly's motion to dismiss (Docket Entry 13); (3) SPCA's motion to dismiss (Docket Entry 15); (4) CPS' motion to dismiss (Docket Entry 19); and (5) Guerrera and Quest's motion to dismiss (Docket Entry 26). For the following reasons, DeRosa and Directional's motion ("Directional Defs.' Mot.") is GRANTED IN PART and DENIED IN PART,

Reilly's motion is GRANTED IN PART and DENIED IN PART, and the motions filed by Guerrera and Quest ("Quest Defs.' Mot."), SPCA, and CPS are GRANTED.

BACKGROUND[1]

The Complaint alleges that Defendants have performed criminal acts "in the name of working for the interest of the corporations, Quest Ventures, [and] Directional Lending." (Compl. ¶ 49.) Quest and Directional were "partner[s]" that shared the same principal place of business. (Compl. ¶ 12.) Guerrera is the president of Quest. (Compl. ¶ 9.) DeRosa is an employee of Directional. (Compl. ¶ 11.) Reilly, an attorney, was appointed receiver of Quest. (Compl. ¶ 13.)

In or about early 2007, Guerrera placed Plaintiff's name on a Suffolk County National Bank account without her knowledge. (Compl. ¶¶ 30-31.) The Complaint appears to allege that Guerrera falsely advised Plaintiff that certain rental properties were not profitable and "stole the profits from the plaintiff[.]" (Compl. ¶¶ 31-32.) Guerrera then made a "false claim" against Plaintiff's bankruptcy proceeding; the funds he sought were actually

---

[1] The following facts are taken from the Complaint and presumed to be true for the purposes of this Memorandum & Order.

"collected rents owned by [Guerrera] and plaintiff."[2]   (Compl. ¶ 31.)

Plaintiff alleges that between February 2011 and March 2013, Defendants "took unlawful possession" of her property.[3] (Compl. ¶ 34.)   From April 25, 2011 to September 10, 2011, Defendants tortured farm animals and stole Plaintiff's personal belongings.   (Compl. ¶ 37.)   On or about April 29, 2011, members of the Police Department, SPCA, and CPS, "raided the property on the pretense[ ] that the plaintiff was torturing the animals, when in fact the Riverhead police using threats and fear of my life and liberty using deadly weapons removed [Plaintiff] from [her] home with [her] three children."   (Compl. ¶ 35.)   Defendants advised Plaintiff that she did not own her property and was trespassing. (Compl. ¶ 36.)   On or about April 29, 2011, Defendants also "extorted" Plaintiff; Defendants took Plaintiff's land, money, and personal belongings and in exchange, she was able to "keep [her]

---

[2] Plaintiff also appears to allege that Guerrera told the bankruptcy court that certain monies were a gift and then made a loan to Plaintiff using the profits from the rental properties. (Compl. ¶ 32.)

[3] The Complaint often refers to "property," "land," or a "farm," without specifying the particular property in question.   The confusion as to the particular property or properties referenced in the Complaint is compounded by Plaintiff's allegation that Defendants committed their crimes at four different properties located in Calverton, NY, Flanders, NY, Manorville, NY, and West Babylon, NY.   (Compl. ¶ 43.)   The Court will generally refer to Plaintiff's "property" or "farm" based on the lack of specificity in the Complaint.

three children and leave [the] farm and home." (Compl. ¶ 38.) In September 2011, Plaintiff became aware that she still owned her farm. (Compl. ¶ 39.) Plaintiff alleges that Defendants "used convicted felons" to take over sixty farm animals, steal Plaintiff's hay crop and water system, and "over 1 million dollars of personal chattels." (Compl. ¶ 42.) Additionally, a court-appointed receiver[4] misappropriated $68,000. (Compl. ¶ 56.)

I.  <u>The Complaint</u>

Plaintiff commenced this action on April 29, 2015. The Complaint asserts six causes of action against all Defendants. The first cause of action asserts a RICO claim and alleges that Guerrera made false representations to the bankruptcy court and attempted to acquire and maintain Plaintiff's assets. (Compl. ¶¶ 60-67.) The second and third causes of action assert RICO claims and allege that Defendants acquired or maintained an interest in Plaintiff's assets through a pattern of racketeering activity that included extortion, money laundering, and/or fraud. (Compl. ¶¶ 70, 77-78.) The fourth cause of action asserts a RICO conspiracy claim and alleges that Defendants conspired to extort Plaintiff in connection with the sale of her property or properties. (Compl. ¶ 83.) The fifth and sixth causes of action

---

[4] The Court assumes that Plaintiff is referring to Reilly.

allege that Defendants violated numerous provisions of Title 18 of the United States Code. (See Compl. ¶¶ 86-94.)

While Plaintiff labels the fifth cause of action as "Title 18 crimes" and fails to label the sixth cause of action, the Complaint only requests "RICO damages" or damages in connection with a RICO conspiracy. (Compl. at 18-19.) Accordingly, the Court construes the fifth and sixth causes of action as asserting additional RICO claims. With the exception of the Police Department,[5] all Defendants have moved to dismiss the Complaint.

## DISCUSSION

DeRosa and Directional (collectively, the "Directional Defendants") have moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(4) ("insufficient process"), (b)(5) ("insufficient service of process"), and (b)(6) ("failure to state a claim upon which relief can be granted"). (Directional Defs.' Br.., Docket Entry 9-6.) See also Fed. R. Civ. P. 12(b)(4)-(b)(6). Reilly has moved to dismiss pursuant to Rule 12(b)(4) and (b)(6). (Reilly's Mot., Docket Entry 13.) Guerrera and Quest (collectively, the "Quest Defendants"), SPCA, and CPS moved to dismiss under Rule 12(b)(6). (Quest Defs.' Mot., Docket Entry 26;

---

[5] The Police Department filed a motion for leave to file a late motion to dismiss, which is presently sub judice. (Docket Entry 33.)

SPCA's Mot., Docket Entry 15; CPS' Mot. Docket Entry 19.)  The
Court will address each basis for dismissal in turn.

I.    Insufficient Process

       The  Court's  Order  dated  July  16,  2015,  directed
Plaintiff  to  serve  Defendants  by  August  27,  2015,  or  show  good
cause  as  to  why  service  was  not  completed  (the  "July  Order").
(July  Order,  Docket  Entry  5,  at  1-2.)   The  July  Order  further
directed  Plaintiff  "to  provide  a  copy  of  th[e]  Order  to  Defendants
along  with  the  Summonses  and  Complaint."   (July  Order  at  2.)

       Plaintiff  concedes  that  she  mailed  the  July  Order  to
Defendants  rather  than  personally  serving  copies.   (Pl.'s  Opp.  to
Directional  Defs.'  Mot.,  Docket  Entry  20,  ¶¶  24,  28  ("I  complied
with  the  directive  of  the  court  to  provide  a  copy  to  the  defendants
with  the  Court's  Order  of  July  16th  by  mail  so  as  to  create  a
record  of  service  of  the  Order").)   Directional  Defendants  and
Reilly  each  argue  that  Plaintiff's  failure  to  personally  serve  the
July  Order  warrants  dismissal  pursuant  to  Rule  12(b)(4).
(Directional  Defs.'  Br.  at  4-5;  Reilly's  Br.,  Docket  Entry  13-3,
at  3-4.)   The  Court  disagrees.

       Rule  12(b)(4)  pertains  to  "'form  of  the  process  rather
than  the  manner  or  method  of  its  service'";  thus,  "'[t]echnically,
therefore,  a  Rule  12(b)(4)  motion  is  proper  only  to  challenge
noncompliance  with  the  provisions  of  [Federal  Rule  of  Civil
Procedure]  4(b)  or  any  applicable  provision  incorporated  by  Rule

4(b) that deals specifically with the content of the summons.'"
Jackson v. City of N.Y., No. 14-CV-5755, 2015 WL 4470004, at *4
(S.D.N.Y. Jun. 26, 2015) (quoting 5B Charles Alan Wright & Arthur
R. Miller, Federal Practice and Procedure § 1353 (3d ed. 2004);
(emphasis supplied).)   Rule 4(b) provides that Plaintiff may
present a summons to the Clerk of the Court; "[i]f the summons is
properly completed, the clerk must sign, seal, and issue it to the
plaintiff for service on the defendant."   Fᴇᴅ. R. Cɪᴠ. P. 4(b).
Additionally, "[a] summons--or a copy of a summons that is
addressed to multiple defendants--must be issued for each
defendant to be served."   Id.   The Directional Defendants and
Reilly do not allege that the content of the summonses were
defective or that the summonses otherwise violated Rule 4(b).
Accordingly, Directional Defendants and Reilly's motions to
dismiss pursuant to Rule 12(b)(4) are DENIED.

II.  Service of Process

        Federal Rule of Civil Procedure 4(e) provides that
service may be made by either:

>         (1) following state law for serving a summons
>         in an action brought in courts of general
>         jurisdiction in the state where the district
>         court is located or where service is made; or
>
>         (2)  doing any of the following:
>             (A)  delivering a copy of the summons and
>             of the complaint to the individual
>             personally;
>             (B) leaving a copy of each at the
>             individual's dwelling or usual place of

>     abode with someone of suitable age and
>     discretion who resides there; or
>     (C) delivering a copy of each to an agent
>     authorized by appointment or by law to
>     receive service of process.

FED. R. CIV. P. 4(e). Federal Rule of Civil Procedure 4(h) provides that corporations may be served within the judicial districts of the United States by either (1) following the relevant state law regarding service of a summons, or (2) "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and--if the agent is one authorized by statute and the statue so requires--by also mailing a copy to the defendant[.]" FED. R. CIV. P. 4(h)(1)(A)-(B). The plaintiff bears the burden of demonstrating that service was valid. Dickerson v. Napolitano, 604 F.3d 732, 752 (2d Cir. 2010).

New York state law provides that personal service on an individual may be made by four methods: (1) delivering the summons to the defendant; (2) delivering the summons to a person of suitable age and discretion at the place of business, home, or "usual place of abode" of the defendant and mailing the summons to the defendant's last known residence or place of business; (3) delivering the summons to the defendant's agent for service of process; and (4) where service by the first two methods cannot be made with "due diligence," affixing the summons to the door of the defendant's actual place of business, home, or "usual place of

abode," and mailing the summons to the defendant's last known residence or place of business. N.Y. CPLR § 308 (1)-(4).

Pursuant to CPLR Section 311-a, service on a limited liability company ("LLC") shall be made by personally delivering a copy of the summons to: (1) a member of the LLC, (2) a manager of the LLC, (3) an agent authorized by appointment to receive process, or (4) any other individual designated by the LLC to receive process. N.Y. CPLR § 311-a(a). Section 311-a further provides that service may be made to the Secretary of State as agent for the LLC. N.Y. CPLR § 311-a(a); N.Y. LIMITED LIABILITY COMPANY LAW § 303(a).

In Plaintiff's Proof of Service for DeRosa (the "DeRosa Proof of Service"), the process server, Thomas Chisholm, II ("Chisholm"), states that he served the summons on DeRosa's secretary at 45 Sarah Drive, Farmingdale, NY ("Sarah Drive"). (Proof of Serv., Docket Entry 7, at 3.) The DeRosa Proof of Service also indicates that Chisholm mailed a copy of the summons to Sarah Drive on August 27, 2015. (Proof of Serv. at 3.) However, the DeRosa Proof of Service also states: "Secretary of Mr. DeRosa . . . refused to take the summons and she locked me out of office. Left the summons at door at 45 Sarah Dr. Farmingdale." (Proof of Serv. at 3.) The Proof of Service for Directional similarly states that Chisholm served the summons on Directional's secretary at 45 Sarah Drive, Farmingdale, NY, mailed a copy to Sarah Drive, and

"Secretary of Directional Lending refused to take summons and locked the door[.] Left summons at Door at 45 Sarah Dr. Farmingdale." (Proof of Serv. at 4.)

The Directional Defendants have proffered the affidavit of Lynn Giordano ("Giordano"), who states that she is a bookkeeper at Island Properties & Associates, another business located at Sarah Drive. (Giordano Aff., Docket Entry 9-4, ¶ 2.) Giordano avers that she is not employed by Directional, she is not employed as DeRosa's secretary, and she is not authorized to accept service on behalf of Directional or DeRosa. (Giordano Aff. ¶¶ 4-5.) Giordano avers that on August 25, 2015, an unidentified man attempted to give her "papers" and demanded that she provide her name; when she declined to provide her name, the man left. (Giordano Aff. ¶¶ 6-8.) Giordano asserts that after she locked the door, the man returned and "stuck the papers in the door handle to the office which opens onto our parking area." (Giordano Aff. ¶ 10.)

The Directional Defendants have also submitted the Affidavit of Marianne Centrella ("Centrella"), the receptionist for Island Properties & Associates. (Centrella Aff., Docket Entry 9-5, ¶ 2.) Centrella asserts that she is responsible for accepting mail deliveries and opening mail delivered to the "individuals and businesses with offices at 45 Sarah Drive." (Centrella Aff. ¶ 4.) Centrella alleges that on September 2, 2015, she opened two

envelopes, one addressed to Directional and one addressed to DeRosa, with both envelopes bearing a return address of 1040 Flanders Rd., Flanders, NY 11901.[6] (Centrella Aff. ¶ 5.) Centrella alleges that these envelopes contained "a court paper from the United States District Court" but did not contain the summons and complaint in this action. (Centrella Aff. ¶¶ 6-8.)

Plaintiff's opposition does little to refute Directional Defendants' allegations regarding service of process. (See generally Pl.'s Opp. to Directional Defs.' Mot.) Plaintiff alleges that "defendants acted with aggressive conduct with refusal to accept personal service." (Pl.'s Opp. to Directional Defs.' Mot. ¶ 22.) Plaintiff annexes an affidavit from Chisholm dated October 1, 2015 ("Chisholm Affidavit"), in which Chisholm states, in relevant part:

> Approximately 5:00 p.m., I appeared at 45 Sarah Drive, Farmingdale, New York. I entered the address stated above and was approached by a woman who asked me could she help me and I stated that I was here to serve a Summons and Complaint on David DeRosa and Directional Lending. Another lady soon appeared from the rear of another area of the building and stated that David DeRosa was not there and refused to accept service . . . I found a secure place on the door via the door handle and securely placed the Summons and Complaint on the door handle since I had been locked out and these ladies had refused service.

(Chisholm Aff., Docket Entry 20, at 26-28 ¶¶ 3, 6.)

_____

[6] The Complaint indicates that Plaintiff resides at 1040 Flanders Road, Flanders, NY 11901. (Compl. ¶ 8.)

A.    Service on DeRosa

        Directional Defendants argue, *inter alia*, that
Plaintiff's process server failed to effectuate service pursuant
to Section 308(2) because "the papers were stuck in a handle of a
door to the building, not with a person of 'suitable age and
discretion' and there was no additional mailing in the manner
prescribed by CPLR § 308(2)." (Directional Defs.' Affirm., Docket
Entry 9-1, ¶ 11.)  However, the delivery requirement set forth in
CPLR Section 308(2) may be satisfied "'by leaving a copy of the
summons outside the door of the person to be served upon refusal
of a person of suitable age and discretion to open the door to
accept it, provided the process server informs the person to whom
delivery is being made that this is being done.'" Bankers Trust
Co. of Cal., N.A. v. Tsoukas, 303 A.D.2d 343, 344, 756 N.Y.S.2d
92, 94 (2d Dep't 2003) (quoting Bossuk v. Steinberg, 58 N.Y.2d
916, 918, 447 N.E.2d 56, 460 N.Y.S.2d 509 (1983)).  Here, the
parties do not dispute that Giordano refused to accept service and
Chisholm left papers in or near the door of Sarah Drive, the place
of business for Directional and DeRosa.  Moreover, Chisholm has
attested that he informed Giordano that he was attempting to serve
a summons and complaint.  (Chisholm Aff. ¶ 3.)  Cf. Roman v.
Guzzardo, 198 A.D.2d 489, 489, 604 N.Y.S.2d 183, 184 (2d Dep't
1993) (Holding that the plaintiff failed to demonstrate service

13

pursuant to CPLR Section 308(2) where "the process server never told the person who purportedly refused to open the door that he was there to serve legal papers.").

Additionally, "[a] process server's affidavit of service constitutes prima facie evidence of valid service," Washington Mut. Bank v. Huggins, --- N.Y.S.3d---, 140 A.D.3d 858, 859 (2d Dep't 2016). The DeRosa Proof of Service indicates that Chisholm mailed a copy of the summons to DeRosa's business address at Sarah Drive on August 27, 2015. (Proof of Serv. at 7.) Accordingly, DeRosa's "conclusory assertion that he did not receive the mailed papers . . . [is] inadequate to overcome the inference of proper mailing that arose from the affidavit," Huggins, 140 A.D.3d at 859, and DeRosa's motion to dismiss pursuant to Rule 12(b)(5) is DENIED.

B.   Service on Directional Lending

As set forth above, New York state law requires that LLCs be personally served by delivery to a member or manager of the LLC, an agent authorized by appointment to receive process, an individual designated to receive process, or the secretary of state.   N.Y. CPLR § 311-a(a).   Giordano alleges--and Plaintiff does not dispute--that she is not an employee of Directional or otherwise authorized to accept service on behalf of Directional. (Giordano Aff.  ¶¶ 4-5.)   Plaintiff does not allege that the Secretary of State was served.

14

The Court acknowledges that "[i]t is unclear whether [Section 311-a] limits the method of service to personal delivery or whether the alternative methods of 'personal service' in CPLR 308(2) (deliver and mail) . . . may also be used." Vincent C. Alexander, Practice Commentaries, N.Y. CPLR § 311-a. Nevertheless, the Court declines to extend Section 311-a to permit service upon an LLC to be made to a person of suitable age and discretion at the LLC's offices. See Ciafone v. Queens Ctr. for Rehab. and Residential Healthcare, 126 A.D.3d 662, 664, 5 N.Y.S.3d 462 (2d Dep't 2015) ("jurisdiction was not obtained by the alleged delivery of the summons and complaint to an employee at the facility's security desk because it is a limited liability company, and its four individual members are the only persons authorized to accept service on its behalf"). Plaintiff concededly failed to serve the Secretary of State or a member, manager, agent, or individual designated to accept service on behalf of Directional as set forth in Section 311-a. It follows that Plaintiff has also failed to serve Directional pursuant to Rule 4(h)(1)(B). Accordingly, Directional's motion to dismiss pursuant to Rule 12(b)(5) is GRANTED and the Complaint is DISMISSED against Directional.

III. Merits of the Complaint

To withstand a motion to dismiss, a complaint must contain factual allegations that "'state a claim to relief that is

plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007)). This plausibility standard is not a "probability requirement" and requires "more than a sheer possibility that a defendant has acted unlawfully." Id. (internal quotation marks and citation omitted). To that regard, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. The Court's plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (internal quotation marks and citation omitted).

A complaint filed by a pro se litigant is to be construed liberally and "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007). See also Hiller v. Farmington Police Dep't, No. 12-CV-1139, 2015 WL 4619624, at *7 (D. Conn. July 31, 2015) (noting that the dismissal of a pro se complaint pursuant to Rule 12(b)(6) is not appropriate "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief") (internal quotation marks and citation omitted). Nevertheless, a pro se complaint must state a

plausible claim for relief and comply with the minimal pleading standards set forth in Federal Rule of Civil Procedure 8. Hiller, 2015 WL 4619624, at *7.

Additionally, the heightened pleading standard required by Federal Rule of Civil Procedure 9(b) "applies to RICO claims for which fraud is the predicate illegal act." Moore v. PaineWebber, 189 F.3d 165, 172-73 (2d Cir. 1999). "In the RICO context, Rule 9(b) calls for the complaint to specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiffs contend the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." Id. at 173 (internal quotation marks and citations omitted).

Generally, the Court's consideration of a Rule 12(b)(6) motion to dismiss is "limited to consideration of the Complaint itself." Dechberry v. N.Y. City Fire Dep't, 124 F. Supp. 3d 131, 135 (E.D.N.Y. 2015) (internal quotation marks and citation omitted). "A complaint is deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint." Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004) (internal quotation marks and citations omitted.) However, if the Court considers matters outside of the complaint in connection with a Rule 12(b)(6) motion, "the motion

must be treated as one for summary judgment under Rule 56 . . . [and] [a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

Here, Plaintiff has submitted opposition to the pending motions that asserts numerous factual allegations that were not included in the Complaint. (See generally Pl.'s Opp. to CPS Mot., Docket Entry 25; Pl.'s Opp. to SPCA Mot., Docket Entry 28; Pl.'s Opp. to Quest Defs.' Mot., Docket Entry 36.)[7] The Court declines to convert the pending motions to dismiss into motions for summary judgment and will not consider any new facts proffered by Plaintiff in her opposition papers. See Costa v. Astoria Fed. Sav. and Loan Ass'n, 995 F. Supp. 2d 146, 148-49 (E.D.N.Y. 2014) ("while the Plaintiff in her opposition asserts additional factual allegations not included in her Complaint, these new factual allegations are inappropriate for consideration by this Court").

A. RICO

The plaintiff states a claim under RICO by alleging: "(1) that the defendant (2) through the commission of two or more acts (3) constituting a pattern (4) of racketeering activity (5)

---

[7] Guerrera and Quest filed a reply arguing that Plaintiff's opposition to their motion was untimely and should not be considered. (Quest Defs.' Reply, Docket Entry 40, ¶¶ 4-9.) However, in light of Plaintiff's pro se status, the Court will consider her opposition to the extent that it does not assert new factual allegations.

directly or indirectly invests in, or maintains an interest in, or participates in (6) an enterprise (7) the activities of which affect interstate or foreign commerce." Hinterberger v. Catholic Health Sys., Inc., 536 F. App'x 14, 16 (2d Cir. 2013) (internal quotation marks and citation omitted). See also 18 U.S.C. § 1962(a)-(c). The Court construes the Complaint as asserting RICO claims under subsections (a), (b), and (c) of 18 U.S.C. Section 1962 ("Section 1962"). (See Compl. ¶¶ 60-61, 69, 76.)[8]

### 1. Section 1962(a) and (b)

The plaintiff states a claim pursuant to Section 1962(a) by alleging: "(1) that a defendant received income from a pattern of racketeering activity; (2) invested that income in the acquisition of a stake in, or the establishment of, an enterprise distinct from the one from which the income was derived; and (3) that the plaintiff suffered an injury flowing from this reinvestment of racketeering income distinct from any injury suffered because of the commission of the original predicate acts of racketeering activity." Wood v. General Motors Corp., No. 08-CV-5224, 2015 WL 1396437, at *8 (E.D.N.Y. Mar. 25, 2015) (internal

---

[8] While Plaintiff cites to "18 U.S.C. § 1961, 1964" in paragraph 76 of the Complaint, she quotes directly from Section 1962(c) by stating "it is unlawful 'for any person employed by or associated with any [such] enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." (Compl. ¶ 76.) See also 18 U.S.C. § 1962(c).

quotation marks and citation omitted). "Section 1962(b) prohibits the acquisition or maintenance of an interest in an enterprise through a pattern of racketeering activity." Id. at *9. The plaintiff states a claim pursuant to Section 1962(b) by alleging that she "suffered an injury resulting from the defendant's acquisition or maintenance of its interest . . . as distinct from an injury caused by the predicate acts alone." Id. at *9 (internal quotation marks and citation omitted). Accordingly, the "enterprise" referenced in Section 1962(a) and (b) "must be something acquired or invested in through illegal activities or by the use of money obtained from illegal activities." USA Certified Merchants, LLC v. Koebel, 262 F. Supp. 2d 319, 330 (S.D.N.Y. 2003). Unlike Section 1962(c), the Section 1962(a)-(b) "enterprise" is "not intended to be the vehicle through which a pattern of racketeering is undertaken, but a separate, legitimate entity purchased through moneys raised through racketeering." Id. at 330-31.

Plaintiff's vague, conclusory allegation that "defendants received income from a pattern of racketeering activity and used such income in connection with investments and purchases from the plaintiff in interstate commerce," (Compl. ¶ 62), does not suffice to plausibly plead the existence of a separate entity purchased with funds raised through racketeering. See McCaffrey v. Cty. of Nassau, No. 11-CV-1668, 2013 WL 2322879,

at *8 (E.D.N.Y. May 25, 2013) (dismissing the plaintiffs' Section 1962(a) claim where they failed to allege "that the [d]efendants have invested any [ ] racketeering income, or that the investment has injured [p]laintiffs"); USA Certified Merchants, 262 F. Supp. 2d at 331. Accordingly, the Complaint fails to state a claim under Section 1962(a) or (b).

### 2. Section 1962(c)

"[T]o establish a violation of 18 U.S.C. § 1962(c), a plaintiff must establish that a defendant, through the commission of two or more acts constituting a pattern of racketeering activity, directly or indirectly participated in an enterprise, the activities of which affected interstate or foreign commerce." DeFalco v. Bernas, 244 F.3d 286, 308 (2d Cir. 2001).

### a. Enterprise

An "enterprise" is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). While the outer boundaries of an "enterprise" are not defined by statute, "partnerships, corporations, and other legal entit[ies], as well as associations-in-fact, may be RICO enterprises." Allstate Ins. Co. v. Lyons, 843 F. Supp. 2d 358, 367-68 (E.D.N.Y. 2012) (alteration in original; internal quotation marks omitted). An association-in-fact enterprise consists of "a group of persons associated together

for a common purpose of engaging in a course of conduct." <u>Boyle</u>
<u>v. U.S.</u>, 556 U.S. 938, 946, 129 S. Ct. 2237, 2244, 173 L. Ed. 2d
1265 (2009) (internal quotation marks and citation omitted). This
type of enterprise has at least three structural components: "a
purpose, relationships among those associated with the enterprise,
and longevity sufficient to permit these associates to pursue the
enterprise's purpose." <u>Id.</u>

The Court liberally construes the Complaint as asserting
that: (1) Defendants formed an association-in-fact enterprise,
and (2) Quest constitutes an enterprise. (<u>See</u> Compl. ¶ 45 ("Quest
and its associated subsidiary Island [P]roperties can be defined
as a RICO 'enterprise' and all the [D]efendants are involved with
furthering the agenda of Quest as associated in fact"); ¶ 47 ("the
existence of Quest is what [D]efendants utilize as a 'structure'
to base their operations upon that is a separate entity apart from
their pattern of criminal activity").) The Court will address
each alleged enterprise in turn.

i. <u>Association-in-fact</u>

The Complaint alleges that "Defendants engaged in a
pattern of racketeering activity" and that Quest, Guerrera, and
Directional were the organizers and beneficiaries of an

enterprise.[9]  The Complaint further alleges that Defendants acted as the agents of Quest, Guerrera, Directional, and DeRosa. (Compl. ¶¶ 3, 18-19.)  However, Plaintiff fails to allege any common purpose shared by Defendants.  While the Complaint can be broadly construed to assert that Guerrera sought to defraud Plaintiff by misrepresenting the profitability of certain rental properties, see Compl. ¶¶ 31-32, the Complaint does not allege that the other Defendants were involved or connected in any way to Guerrera's alleged conduct.  Similarly, even if the Court liberally construes the Complaint to assert that Quest, as mortgagee of one or more of Plaintiff's properties, see Compl. ¶ 10, sought to obtain control of Plaintiff's property, the Complaint similarly fails to connect this purpose to any of the Defendants.  The Complaint instead contains a series of general allegations of an "enterprise" without any elaboration as to the particular purpose of such alleged enterprise.

Additionally, the Complaint fails to allege any relationships between most of the Defendants.  See Boyle, 556 U.S. at 946, 129 S. Ct. at 2244 (noting that "[t]he concept of associat[ion] requires both interpersonal relationships and a common interest") (alteration in original; internal quotation

---

[9] The Complaint also alleges that non-party Island Properties also was an organizer and direct beneficiary of the alleged enterprise.  (Compl. ¶ 18.)

marks and citation omitted).  The Complaint alleges that Guerrera was president of Quest, Quest and Directional were "partner[s]," and DeRosa was an employee of Directional.  (Compl. ¶¶ 9-12.) However, aside from vague recitations regarding a criminal enterprise, the Complaint fails to assert that DeRosa, Reilly, SPCA, or CPS had any relationship with or connection to each other or Quest.  Accordingly, the Court finds that Plaintiff has failed to establish that Defendants comprised an association-in-fact enterprise.

### ii. Quest

Quest constitutes a RICO enterprise based on its corporate status.  See 18 U.S.C. § 1961(4) (a corporation or partnership falls within the definition of an enterprise). However, Plaintiff must also allege that Defendants "participat[ed], directly or indirectly, in the conduct of such enterprise's affairs." 18 U.S.C. § 1962(c).  The Court finds that the Complaint fails to sufficiently plead that Defendants, with the exception of Guerrera, exercised some degree of control over Quest.

A defendant's participation in the conduct of the RICO enterprise is analyzed under the "operation or management test." DeFalco, 244 F.3d at 309.  Under that test, "to conduct or participate, directly or indirectly, in the conduct of an enterprise's affairs, 'one must have some part in directing those

affairs.'" Id. (quoting Reves v. Ernst & Young, 507 U.S. 170, 185, 113 S. Ct. 1163, 1173, 122 L. Ed. 2d 525 (1993)). Although the operation and management test has been found to be a "relatively low hurdle" for a plaintiff to overcome at the pleading stage, Sky Med. Supply Inc. v. SCS Support Claims Servs., Inc., 17 F. Supp. 3d 207, 224 (E.D.N.Y. 2014) (internal quotation marks and citation omitted), it is insufficient to merely "allege that a defendant provided services that were helpful to an enterprise, without alleging facts that, if proved, would demonstrate some degree of control over the enterprise" Elsevier Inc. v. W.H.P.R., Inc., 692 F. Supp. 2d 297, 307-08 (S.D.N.Y. 2010).

The Complaint does not allege that DeRosa, SPCA, or CPS participated in Quest's operation or management or had any role in directing Quest's affairs; Plaintiff's general reference to Defendants being "agents" of Quest does not suffice. (See, e.g., Compl. ¶ 19.) Further, while the Complaint alleges that Reilly was the receiver of Quest, (Compl. ¶ 13), which arguably indicates some level of involvement in Quest's management, the Complaint does not allege that Reilly had any role in directing Quest's affairs and does not elaborate as to any actions Reilly took during the course of the alleged receivership.

Additionally, Quest cannot function as both the RICO "person" and RICO "enterprise." Pursuant to RICO's "distinctness" requirement, the plaintiff must assert that two distinct entities

exist: "(1) a person; and (2) an enterprise that is not simply the same person referred to by a different name." Cruz v. FXDirectDealer, LLC, 720 F.3d 115, 120 (2d Cir. 2013) (internal quotation marks and citations omitted). Thus, "'a corporate entity may not be both the RICO person and the RICO enterprise under Section 1962(c).'" Cataldi v. United Water N.Y., 363 F. App'x 769, 770 (2d Cir. 2010) (quoting Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A., 30 F.3d 339, 344 (2d Cir. 1994)). Accordingly, to the extent that Quest constitutes the subject "enterprise," it cannot also be sued as a RICO defendant. But see Riverwoods, 30 F.3d at 344 (noting that the distinctness requirement does not preclude a lawsuit against a corporation "where it associates with others to form an enterprise that is sufficiently distinct from itself").

However, the Complaint sufficiently pleads that Guerrera exercised control over Quest. The Complaint alleges that Guerrera was the president of Quest, (Compl. ¶ 9.), which can be liberally construed to assert that Guerrera was involved in Quest's operation or management. Further, Guerrera's position as Quest's president does not implicate distinctness concerns to the extent that Guerrera is the RICO "person" and Quest is the RICO "enterprise." In Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 166, 121 S. Ct. 2087, 2092, 150 L. Ed. 2d 198 (2001), the Supreme Court held that the distinctness requirement did not preclude a Section

1962(c) claim where the corporation's owner was the RICO "person" and the corporation was the RICO "enterprise." The Court distinguished the factual scenario in <u>King</u> from Second Circuit precedent dismissing RICO complaints where "the corporation was the 'person' and the corporation, together with all its employees and agents, were the 'enterprise,'" and where the "same bank was both 'person' and 'enterprise.'" <u>Id.</u> at 164 (citing <u>Riverwoods</u>, 30 F.3d at 344; <u>Anatian v. Coutts Bank (Switzerland) Ltd.</u>, 193 F.3d 85, 89 (1999)).

### b. <u>Pattern of Racketeering Activity</u>

Under RICO's definitional section, a "'pattern of racketeering activity'" requires that at least two racketeering acts be committed within ten years of each other. <u>Spool v. World Child Int'l Adoption Agency</u>, 520 F.3d 178, 183 (2d Cir. 2008) (quoting 18 U.S.C. § 1961(5)). "The acts of racketeering activity that constitute the pattern must be among the various criminal offenses listed in § 1961(1), and they must be related, and [either] amount to or pose a threat of continuing criminal activity." <u>Id</u>. (alteration in original; internal quotation marks and citations omitted).

The Court finds that the Complaint fails to plausibly allege that Guerrera committed any racketeering activity. The only specific allegations against Guerrera are that he: (1) placed Plaintiff's name on a bank account without her knowledge or

consent, (2) misrepresented to Plaintiff that there were no profits from certain rental properties, and (3) filed a claim in Plaintiff's bankruptcy proceeding seeking monies that were jointly owned by Plaintiff and Guerrera. (Compl. ¶¶ 31-32.) While these allegations may be liberally construed as asserting a predicate act of bankruptcy fraud, see 18 U.S.C. § 1961(1)(D), they do not even approach the level of specificity required by Rule 9(b). See FED. R. CIV. P. 9(b) (requiring that allegations sounding in fraud be "state[d] with particularity"). The Complaint does not particularly allege any fraudulent statements made by Guerrera, state the time or place that the statements were made, or offer any explanation as to why the statements were fraudulent. See Moore, 189 F.3d at 172-73.

Parenthetically, even if the Court were to find that Reilly directed the affairs of Quest by virtue of his position as receiver, the Complaint similarly fails to allege that he committed any racketeering activities. The only specific allegations against Reilly are the conclusory assertions that the Suffolk County Supreme Court provided him with "legal authority to run a[n] illegal enterprise[,]" (Compl. ¶ 33), and that "the court-appointed receiver" misappropriated $68,000 (Compl. ¶ 56).

The Complaint also contains a series of allegations about the conduct of "defendants" without specifying which particular Defendants were involved in such action. (See Compl.

¶¶ 34, 36-38, 40-42, 56.)  However, the Court must evaluate RICO allegations as to each individual defendant.  Franzone v. City of N.Y., No. 13-CV-5282, 2015 WL 2139121, at *8 (E.D.N.Y. May 4, 2015).  It is impossible for the Court to discern which defendants these allegations are asserted against in the absence of any such specification.  See, e.g., id. at *9 (holding that "plaintiffs' laundry list approach relies impermissibly on the type of 'group pleading' that does not suffice for RICO purposes"); O'Neil v. Ponzi, No. 09-CV-0983, 2009 WL 3459482, at *3 (N.D.N.Y. Oct. 22, 2009) ("unsubstantiated and conclusory allegations that certain named and unnamed defendants participated in certain enterprises and took actions at unspecified times and places are insufficient to state a RICO claim") (internal quotation marks and citations omitted).

Moreover, Plaintiff's apparent attempt to plead predicate acts of extortion, robbery, and/or Hobbs Act violations fails to comply with the more lenient pleading standard under Federal Rule of Civil Procedure 8.  See FED. R. CIV. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief[.]")  The Complaint alleges that Defendants "extorted [Plaintiff's] land over 60 animals, all [her] money and personal belongings and in exchange [Plaintiff] g[o]t to keep [her] three children and leave [the] farm and home," (Compl. ¶ 38);

"stole the [P]laintiff's home using threats of fear and violence,"
(Compl. ¶ 40); "took unlawful possession of the [P]laintiff[']s
property," (Compl. ¶ 34); tortured farm animals and stole
Plaintiff's personal belongings (Compl. ¶ 37); and sold
Plaintiff's hay crop and "personal chattels" (Compl. ¶ 42).
Notwithstanding Plaintiff's failure to assert that Guerrera is
connected to any of these acts, the Court finds that this series
of conclusory allegations do not suffice to plead that racketeering
acts were committed. See Iqbal, 556 U.S. at 678, 129 S. Ct. at
1949 ("Nor does a complaint suffice if it tenders naked
assertion[s] devoid of further factual enhancement.") (internal
quotation marks and citation omitted; alteration in original).

Accordingly, Plaintiff's RICO claims are DISMISSED
against Guerrera, Quest, DeRosa, Reilly, SPCA, and CPS.

c.   Child Protective Services

The Second Circuit has held that "there is no municipal
liability under RICO[.]" Rogers v. City of N.Y., 359 F. App'x
201, 204 (2d Cir. 2009). See also McCaffrey, 2013 WL 2322879, at
*7 ("[a] municipality is incapable of forming the requisite
criminal intent for RICO liability") (internal quotation marks and
citation omitted); Wee v. Rome Hosp., No. 93-CV-0498, 1996 WL
191970, at *5 (N.D.N.Y. 1996) (holding that the plaintiff could
not sue municipal hospitals under RICO as "[m]unicipalities and
their agents are not subject to civil RICO claims because

30

government entities are incapable of forming malicious intent"). As set forth above, the Complaint fails to plead CPS' involvement in an enterprise. Alternatively, the Court finds that Plaintiff's claim against CPS, a state agency, must fail in the absence of municipal liability under RICO.

B.  RICO Conspiracy

The "failure to plead a substantive RICO violation is [ ] 'fatal to plaintiff[']s RICO conspiracy claim under § 1962(d).'" Franzone, 2015 WL 2139121, at *10 (quoting D. Penguin Bros., Ltd. v. City Nat'l Bank, 587 F. App'x 663, 669 (2d Cir. 2014)). Accordingly, Plaintiff's claim for RICO conspiracy is DISMISSED.

IV. Leave to Amend

The Second Circuit has held that "[w]hen a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." Hayden v. Cty. of Nassau, 180 F.3d 42, 53 (2d Cir. 1999). See also FED. R. CIV. P. 15(a)(2) ("[t]he court should freely give leave [to amend] when justice so requires"). "However, a district court has the discretion to deny leave to amend where there is no indication from a liberal reading of the complaint that a valid claim might be stated." Perri v. Bloomberg, No. 11-CV-2646, 2012 WL 3307013, at *4 (E.D.N.Y. Aug. 13, 2012).

The Court GRANTS Plaintiff leave to replead her RICO and RICO conspiracy claims against Guerrera, Quest, DeRosa, Reilly,

and SPCA. However, the Court DENIES Plaintiff leave to replead her RICO and RICO conspiracy claims against CPS in the absence of RICO liability for municipal agencies.

In her opposition to CPS' motion, Plaintiff both asserts that she "intend[s] to seek leave to file an amended complaint which would contain a properly asserted [ ] § 1983 claim" and requests that the Court amend the Complaint. (Pl.'s Opp. to CPS Mot. ¶¶ 1, 8.) However, Plaintiff has not filed a motion to amend nor has she attached a proposed Amended Complaint. To the extent Plaintiff's opposition can be construed as a request to amend the Complaint to include a claim against CPS under 42 U.S.C. § 1983, such request is DENIED WITHOUT PREJUDICE. The proper vehicle for Plaintiff's request is a motion for leave to amend the Complaint. The Court reminds Plaintiff that any motion for leave to amend the Complaint must include a proposed Amended Complaint. See Akran v. U.S., 997 F. Supp. 2d 197, 207 (E.D.N.Y. 2014), aff'd, 581 F. App'x 46 (2d Cir. 2014) ("[i]t is well-settled that when seeking leave to amend, the movant must submit a complete copy of the proposed amended complaint . . . so that both the Court and the opposing party can understand the exact changes sought") (internal quotation marks and citation omitted; ellipsis in original).

## CONCLUSION

For the foregoing reasons, Directional Defendants' motion to dismiss (Docket Entry 9) is GRANTED IN PART and DENIED

IN PART.  Directional Defendants' motion to dismiss pursuant to Rule 12(b)(4) is DENIED.  Directional Defendants' motion pursuant to Rule 12(b)(5) is GRANTED as to Directional and DENIED as to DeRosa.  Plaintiff's claims against Directional are DISMISSED WITHOUT PREJUDICE.  DeRosa's motion to dismiss pursuant to Rule 12(b)(6) is GRANTED.  Reilly's motion to dismiss (Docket Entry 13) is GRANTED IN PART and DENIED IN PART.  Reilly's motion to dismiss pursuant to Rule 12(b)(4) is DENIED and his motion to dismiss pursuant to Rule 12(b)(6) is GRANTED.  The motions to dismiss filed by SPCA (Docket Entry 15), CPS (Docket Entry 19) and Quest Defendants (Docket Entry 26) are GRANTED.

The Complaint is DISMISSED WITHOUT PREJUDICE and with leave to replead as to Guerrera, Quest, DeRosa, Reilly, and SPCA. If Plaintiff wishes to replead her claims, she must file an Amended Complaint within forty-five (45) days of the date of this Memorandum and Order.  The Complaint is DISMISSED WITH PREJUDICE as to CPS.  The Clerk of the Court is directed mail a copy of this Order to the pro se Plaintiff.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:     August __15__, 2016
           Central Islip, New York