UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------X
MARIE GUERRERA TOOKER,

                         Plaintiff,

                                              <u>MEMORANDUM & ORDER</u>
          -against-                          15-CV-2430(JS)(ARL)

SALVATORE GUERRERA, QUEST VENTURES LTD.,
DAVID DEROSA, DIRECTIONAL LENDING LLC,
DAVID REILLY, TOWN OF RIVERHEAD, and
SOCIETY FOR PREVENTION OF CRUELTY TO
ANIMALS,

                         Defendants.
---------------------------------------X

APPEARANCES
For Plaintiff:        Marie Guerrera Tooker, <u>pro</u> <u>se</u>
                      1040 Flanders Road
                      Flanders, NY 11901

For Defendants:
Salvatore Guerrera    Raymond R. Grasing, Esq.
and Quest Ventures    Law Firm of Grasing and Associates, P.C.
                      99 Smithtown Blvd., Suite 6
                      Smithtown, NY 11787

David DeRosa          Christopher H. Thompson, Esq.
                      Law Offices of Christopher Thompson
                      33 Davison Lane East
                      West Islip, NY 11795

David Reilly          Daniel K. Cahn, Esq.
                      Cahn & Cahn, P.C.
                      105 Maxess Road, Suite 124
                      Melville, NY 11747

Town of Riverhead     Daniel P. Barker, Esq.
                      Christopher B. Abbott, Esq.
                      Smith, Finkelstein, Lundberg, Isler and
                        Yakaboski LLP
                      456 Griffing Avenue
                      Riverhead, NY 11901

David Charles Blaxill, Esq.
                      Hardin Kundala McKeon & Poletto P.A.
                      110 William Street
                      New York, NY 10038

SEYBERT, District Judge:

On April 29, 2015, plaintiff Marie Guerrera Tooker ("Plaintiff") commenced this action pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 et. seq. Presently pending before the Court are: (1) the Town of Riverhead's (the "Town") motion to dismiss, (Docket Entry 49), (2) David Reilly's ("Reilly") second motion to dismiss, (Docket Entry 66), (3) Salvatore Guerrera ("Guerrera") and Quest Ventures, Ltd.'s ("Quest") second motion to dismiss, (Docket Entry 67), (4) David DeRosa's ("DeRosa") motion to dismiss the Amended Complaint, (Docket Entry 68), (5) Plaintiff's motion for leave to file a motion to amend or Second Amended Complaint, (Docket Entry 79), and (6) Plaintiff's request for an evidentiary hearing, (Docket Entry 83). For the following reasons, the Town's motion is TERMINATED AS MOOT, Reilly, Guerrera, and DeRosa's (collectively, "Defendants") motions are GRANTED, and Plaintiff's motions are DENIED.

<u>BACKGROUND</u>

The Court assumes familiarity with the underlying facts of this matter, which are set forth in its Memorandum and Order dated August 15, 2016 (the "August 2016 Order"). See Tooker v.

_Guerrera_, No. 15-CV-2430, 2016 WL 4367956 (E.D.N.Y. Aug. 15, 2016).

Briefly, Plaintiff commenced this action against Guerrera, DeRosa,

Directional Lending LLC ("Directional"), Reilly, the Town Police

Department, Society for Prevention of Cruelty to Animals ("SPCA"),

and Child Protective Services ("CPS"). _Id._ In her initial

Complaint, Plaintiff alleged that the defendants "performed

criminal acts in the name of working for the interest of the

corporations, Quest Ventures, [and] Directional Lending." _Id._

at *1. Plaintiff alleged that Guerrera was the President of Quest,

DeRosa was an employee of Directional, and Reilly was appointed

receiver of Quest. _Id._ The crux of Plaintiff's Complaint centered

on allegations that Guerrera stole certain rental profits, and he

and his co-defendants unlawfully took possession of Plaintiff's

property, stole her personal belongings, and tortured her farm

animals. _Id._

　　　　The Court addressed motions to dismiss filed by Guerrera

and Quest, DeRosa and Directional, Reilly, SCPA, and CPS in its

August 2016 Order. The Court dismissed the Complaint against

Directional based on insufficient service of process. _Id._ at *5.

With respect to the remaining defendants, the Court held that the

Complaint failed to state a RICO claim under 18 U.S.C. Section

1962(a) and (b) based on Plaintiff's failure to allege the

existence of a separate entity purchased with funds raised through

racketeering. _Id._ at *7. The Court also found that Plaintiff

failed to state a RICO claim under 18 U.S.C. Section 1962(c). Particularly, the Court held that: (1) Plaintiff failed to establish that the defendants comprised an association-in-fact enterprise, (2) while Quest constituted an enterprise based on its corporate status, Plaintiff failed to sufficiently plead that any defendants aside from Guerrera exercised control over Quest, and (3) Plaintiff failed to plausibly allege that Guerrera committed any racketeering activity. Id. at *8-9. The Court also dismissed the Complaint against CPS due to the absence of municipal liability under RICO. Id. at *10. Finally, the Court dismissed Plaintiff's RICO conspiracy claim in light of her failure to plead a substantive RICO violation. Id. at *11. The Court granted Plaintiff limited leave to replead her RICO and RICO conspiracy claims against Guerrera, Quest, DeRosa, Reilly, and SPCA, and denied Plaintiff leave to replead her claims against CPS. Id. at *11.

I.  The Amended Complaint[1]

On November 21, 2016, Plaintiff filed a 116-page Amended Complaint naming only Guerrera, DeRosa, and Reilly as defendants in the caption. Throughout the Amended Complaint, Plaintiff refers

---

[1] The following facts are taken from the Amended Complaint, (Am. Compl., Docket Entry 54), and presumed to be true for the purposes of this Memorandum and Order. Due to Plaintiff's repetition of paragraph numbers, the Court has included both the page and paragraph citation for ease of reference.

to numerous non-parties as "defendants" and asserts a plethora of allegations against these individuals. (See generally Am. Compl.)

Plaintiff alleges that beginning in 2001, Defendants formed an enterprise that she refers to as the "Suffolk Crime Family," which engaged in a pattern of racketeering activity that included "kickbacks, bribery, aiding and abetting, witness tampering and Fraud" as well as "[e]xtortion, robbery, bribery, attempted kidnapping, tampering with a witness and obstructing justice." (Am. Compl. at 2-3 ¶¶ 3-7, 9.) Beginning in 2002, Plaintiff became the target of numerous code violations and frivolous lawsuits and was "slander[ed]" by members of local government when she tried to hold an event. (Am. Compl. at 15 ¶¶ 69-70.) From 2008 to the present, Defendants engaged in unfair debt collection to collect monies that were not owed. (Am. Compl. at 58 ¶ 163.) In December 2009, Plaintiff was "attacked and raided" by Suffolk County and the Town in connection with a Christmas light show and lost income of over $30,000. (Am. Compl. at 38 ¶ 178; 39 ¶ 180.) Defendants also filed false police reports and Plaintiff was charged with various crimes between 2011 and 2014. (Am. Compl. at 42-43 ¶¶ 197-202; at 57 ¶ 158.)

Guerrera's corporation, Quest, became the "main Criminal enterprise" by claiming to hold title to the Plaintiff's farm (the "Farm"). (Am. Compl. at 7 ¶ 29.) Additionally, in or about April 2011, DeRosa and Guerrera formed a partnership. (Am. Compl. at 11

¶ 49.)  Plaintiff appears to allege that SPCA is an enterprise that gained donations through extortion and robbery.  (Am. Compl. at 11 ¶ 45; at 62 ¶ 173.)  Plaintiff also alleges that IPA Asset Management IV, a non-party, is an enterprise that DeRosa is affiliated with and maintains "some" control over.  (Am. Compl. at 21 ¶ 99.)

Plaintiff alleges that one of the "enterprise's" goals was to steal the Farm from her.  (Am. Compl. at 8 ¶ 32.)  To that end, in March 2008, Guerrera commenced a foreclosure action with respect to the Farm even though he and Quest lacked standing (the "Foreclosure Action").  (Am. Compl. at 16 ¶¶ 73-74; at 35 ¶ 164.)  Reilly was appointed receiver of the Farm and violated court order by appointing DeRosa as manager of the Farm.  (Am. Compl. at 21 ¶ 100.)  Reilly was appointed receiver of 90 acres that were not part of the Foreclosure Action and collected rental revenue of $72,000 on those 90 acres.  (Am. Compl. at 48 ¶ 122.)  On February 23, 2009, a default judgment was entered in the Foreclosure Action. (Am. Compl. at 36 ¶ 168.)

Plaintiff asserts that Defendants exerted influence over public officials, used fraudulent documents, and bribed a judge to claim title to the Farm.  (Am. Compl. at 6 ¶ 21; at 12 ¶ 53; at 17 ¶ 80.)  Guerrera conspired with one of the state court judges who presided over the Foreclosure Action and Defendants submitted false representations.  (Am. Compl. at 38, ¶ 175; at 45 ¶ 211.)

Defendants also submitted a false appraisal that misrepresented the value of the agricultural property. (Am. Compl. at 54, ¶ 149.) Additionally, Town police officers guarding the main gate to the Farm threatened and detained Plaintiff. (Am. Compl. at 12 ¶ 54.) These crimes have not been prosecuted due to "corruption in the District Attorney's Office and the [T]own of Riverhead." (Am. Compl. at 43 ¶ 203.)

In April 2010, Plaintiff "stop[ped] the foreclosure sale by filing a bankruptcy petition." (Am. Compl. at 59 ¶ 167.) On or about May 27, 2010, Plaintiff's horses were found down the road. (Am. Compl. at 60 ¶ 168.) From 2010 through 2011, Plaintiff's horses were purposely let out of the Farm and, on one occasion, horses were found on the Long Island Expressway. (Am. Compl. at 60 ¶¶ 168-70; at 63 ¶ 181.) Plaintiff showed SPCA the cut fence on the Farm but their agent failed to investigate. (Am. Compl. at 63 ¶ 178.) Plaintiff alleges that in 2015, Guerrera "confessed" that DeRosa hired someone to cut the fence and put the horses on the expressway. (Am. Compl. at 63 ¶ 179.) On April 29th of an unspecified year, SPCA "raided" the Farm after receiving a complaint from Reilly. (Am. Compl. at 69 ¶ 213.) From May 2013 through September 17, 2013, the fences for the horses were "constant[ly] taken down." (Am. Compl. at 74 ¶ 246.) On September 17, 2013, one of Plaintiff's ponies was led to a

dangerous road; that pony was later killed. (Am. Compl. at 75 ¶¶ 247, 252.)

In February 2011, DeRosa and Reilly's employees trespassed on Plaintiff's property and Allied Security stationed security guards on the property. (Am. Compl. at 47 ¶ 218.) Reilly communicated with a polo team and told them that Plaintiff did not own the property and the team should not give her a $20,000 deposit. (Am. Compl. at 79 ¶ 263.) In or about August 2011, DeRosa and Reilly harvested Plaintiff's hay crop, which had a wholesale market value of $15,000, even though DeRosa did not have the legal right to be on the property or take Plaintiff's assets. (Am. Compl. at 47 ¶ 218.)

Plaintiff has been deprived of rental revenue collected by DeRosa and his agents. Additionally, DeRosa, Reilly, and Guerrera bribed Plaintiff's tenants at the Farm to stop paying rent. (Am. Compl. at 47 ¶ 221; at 56 ¶ 156; at 93 ¶ 404.) DeRosa's employees also damaged Plaintiff's automatic watering system and the pumping system to her well. (Am. Compl. at 51 ¶ 135.) Reilly oversaw the Farm and permitted "criminals to come on the farm and terrorize, steal the water system, steal everything [they] own[ed.]" (Am. Compl. at 80 ¶ 268.) DeRosa also paid an individual to remove the Farm's water system. (Am. Compl. at 89 ¶ 299.) Guerrera and DeRosa persuaded Plaintiff's ex-husband to seek full

custody of Plaintiff's two sons as a means of applying pressure on Plaintiff. (Am. Compl. at 82 ¶¶ 275-76.)

Ultimately, Defendants acquired Plaintiff's assets, including her real property,[2] farm animals, and personal belongings. (Am. Compl. at 4 ¶ 9; at 6 ¶ 21.) The Farm was sold to Quest for $500 in connection with the Foreclosure Action. (Am. Compl. at 46 ¶ 212.) The Farm was raided and Plaintiff's belongings were "taken by an armed robbery, while the animals were being tortured and [she and her] children [ ] were thrown in the street homeless[.]" (Am. Compl. at 17 ¶ 79.) The Town threatened Plaintiff that she would be arrested if she set foot on the Farm. (Am. Compl. at 66 ¶ 193.)

In or about July 2015, Guerrera confessed to bribery and criminal activity after being threatened by the Suffolk Crime Family. (Am. Compl. at 17 ¶ 81.) Particularly, Guerrera confessed that "the 4 1/2 acres and [Plaintiff's] home at the farm never had a mortgage," (Am. Compl. at 46 ¶ 213), and that DeRosa and his "agents" were responsible for cutting the fence and leading Plaintiff's horses onto the Long Island Expressway in May 2010. (Am. Compl. at 68 ¶ 204.)

---

[2] Plaintiff references property located at the following addresses: 3605, 3561, 3581 Middle Country Road, Calverton, NY; 112 Dayton Avenue, Manorville, NY; 114 South Street, Manorville, NY; and 1040 Flanders Road, Flanders, NY. (Am. Compl. at 4 ¶ 9.)

The Amended Complaint also annexes an Affidavit purportedly executed by Guerrera (the "Affidavit"). (Am. Compl. at 114-117.) The Affidavit alleges that in 2009, DeRosa took control of the litigation and management of the Farm and Guerrera's role was "restricted." (Am. Compl. at 114.) The Affidavit further alleges that Guerrera was "pressured and intimidated" to accept DeRosa as an investor in 2011. (Am. Compl. at 114.) Additionally, the Affidavit alleges that: (1) DeRosa worked with Reilly and others to "rob [Plaintiff] and drive her off her own property by threats of violence and fear of her life and [Guerrera's] grand children[3] and over 60 animals," (2) Reilly was appointed receiver of 90 acres that were not part of the Foreclosure Action, (3) from February 2011 through September 2011, Reilly and DeRosa took possession of those 90 acres and stole over $72,000 from Plaintiff, (4) in August 2011, DeRosa collected money from bales of hay that belonged to Plaintiff, and (5) in or about April 2011, DeRosa hired individuals to remove the water system on the Farm. (Am. Compl. at 115-116.) The Affidavit also states that DeRosa submitted fraudulent court papers to "steal" a parcel of land that was not covered under the relevant mortgages, and DeRosa and Reilly's acts were part of "an ongoing plan to steal the farm from [Plaintiff] and now Quest Ventures." (Am. Compl. at 116-117.)

---

[3] Guerrera is Plaintiff's father. (Am. Compl. at 7 ¶ 28.)

## II.  Pending Motions

On September 6, 2016, prior to the filing of the Amended Complaint, the Town filed a motion to dismiss.  (Town's Mot., Docket Entry 49.)  Subsequently, Reilly, Guerrera, and DeRosa each filed motions to dismiss the Amended Complaint.  (Reilly's Mot., Docket Entry 66; Guerrera's Mot., Docket Entry 67; DeRosa's Mot., Docket Entry 68.)  Reilly and DeRosa seek dismissal of the Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  (See Reilly's Mot.; DeRosa's Mot.) Guerrera seeks dismissal of the Amended Complaint for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), as well as failure to state a claim pursuant to Rule 12(b)(6).[4]  With respect to subject matter jurisdiction, Guerrera argues that Plaintiff's claims are barred by the Rooker Feldman doctrine.

Plaintiff filed opposition to Reilly and DeRosa's motions, (see Pl.'s Opp. to Reilly and DeRosa, Docket Entry 71), as well as opposition to Guerrera's motion, (see Pl.'s Opp. to Guerrera, Docket Entry 76).

---

[4] Guerrera's Notice of Motion also references dismissal pursuant to Rule 12(b)(2) for lack of personal jurisdiction.  (Guerrera's Mot.)  However, his memorandum of law only references Rule 12(b)(1) and (b)(6) and fails to posit any arguments regarding personal jurisdiction.  (See Guerrera's Br., Docket Entry 67-2, at 2.)  The Court assumes that Guerrera's reference to Rule 12(b)(2) is a typographical error.

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).  The plaintiff bears the burden of demonstrating by a preponderance of the evidence that subject matter jurisdiction exists.  Id.  In resolving a motion to dismiss for lack of subject matter jurisdiction, the Court "may consider evidence outside the pleadings."  See Morrison v. Nat'l Austl. Bank, Ltd., 547 F.3d 167, 170 (2d Cir. 2008), aff'd, 561 U.S. 247, 130 S. Ct. 2869, 177 L. Ed. 2d 535 (2010) (citation omitted).

To withstand a motion to dismiss, a complaint must contain factual allegations that "'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007)).  This plausibility standard is not a "probability requirement" and requires "more than a sheer possibility that a defendant has acted unlawfully."  Id. (internal quotation marks and citation omitted).  To that regard, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. The Court's plausibility determination is a "context-specific task

that requires the reviewing court to draw on its judicial experience and common sense." Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (internal quotation marks and citation omitted).

A complaint filed by a pro se litigant is to be construed liberally and "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007) (internal quotation marks and citation omitted). See also Hiller v. Farmington Police Dep't, No. 12-CV-1139, 2015 WL 4619624, at *7 (D. Conn. July 31, 2015) (noting that the dismissal of a pro se complaint pursuant to Rule 12(b)(6) is not appropriate "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief") (internal quotation marks and citation omitted). Nevertheless, a pro se complaint must state a plausible claim for relief and comply with the minimal pleading standards set forth in Federal Rule of Civil Procedure 8. Id. Additionally, RICO predicate acts sounding in fraud "must be pled with particularity under [Federal Rule of Civil Procedure] 9(b), and a plaintiff must allege facts giving rise to a strong inference of fraudulent intent." Wood v. Gen. Motors Corp., No. 08-CV-5224, 2015 WL 1396437, at *4 (E.D.N.Y. Mar. 25, 2015).

Generally, the Court's consideration of a Rule 12(b)(6) motion to dismiss is "limited to consideration of the Complaint

itself." <u>Dechberry v. N.Y. City Fire Dep't</u>, 124 F. Supp. 3d 131, 135 (E.D.N.Y. 2015) (internal quotation marks and citation omitted). "A complaint is deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint." <u>Sira v. Morton</u>, 380 F.3d 57, 67 (2d Cir. 2004) (internal quotation marks and citations omitted.)

In her opposition papers, Plaintiff fails to directly respond to Defendants' respective motions and instead posits additional facts and exhibits. (<u>See</u> <u>generally</u> Pl.'s Opp. to Reilly and DeRosa; Pl.'s Opp. to Guerrera.) Accordingly, the Court will not consider Plaintiff's opposition to Defendants' Rule 12(b)(6) motions to the extent Plaintiff references new facts and documents not included in the Amended Complaint. The Court similarly declines to consider documents proffered by Defendants that fall outside the Amended Complaint in its Rule 12(b)(6) analysis. (<u>See</u> <u>generally</u> Reilly's Mot.; Guerrera's Mot.)

I.  <u>Additional Parties</u>

As previously noted, the August 2016 Order granted Plaintiff limited leave to amend her Complaint to replead her RICO and RICO conspiracy claims against Guerrera, Quest, DeRosa, Reilly, and SPCA. <u>Tooker</u>, 2016 WL 4367956, at *11. However, the Amended Complaint only names Guerrera, DeRosa, and Reilly as

defendants, and Plaintiff's affidavit of service indicates that those were the only defendants served with the Amended Complaint. (Am. Compl. at 118.)

Notwithstanding the Court's directive, the Amended Complaint contains numerous allegations with respect to non-parties Plaintiff refers to as "defendants," as well as allegations regarding the SPCA. (See, e.g., Am. Compl. at 3 ¶ 7; at 22-29 ¶¶ 101-25.) Plaintiff has also requested, without further elaboration, that the Court amend the Complaint to "substitute John and Jane Doe 1 through 35 with the defendants herein and upon discovery will find the unknown John and Jane Doe defendants names." (Am. Compl. at 104 ¶ 447.)

The Court declines to deem the plethora of non-parties referenced in Plaintiff's Amended Complaint to be defendants in this action. As previously noted, Plaintiff was given limited leave to amend her Complaint against specific defendants. Further, the Court construes the Amended Complaint as being asserted against Guerrera, DeRosa, and Reilly only in light of the caption of the Amended Complaint and Plaintiff's failure to serve the Amended Complaint on Quest, SPCA, and/or the Town. (See also Pl.'s Opp. to Guerrera at 17 ("Quest is the criminal enterprise and is no longer a defendant if you can read my amended complaint front page").)

Even if the Court were to construe the Amended Complaint as asserting claims against the Town, Plaintiff's claims fail based on the absence of municipal liability under RICO.  See Rogers v. City of N.Y., 359 F. App'x 201, 204 (2d Cir. 2009).  Accordingly, the Town's motion to dismiss is TERMINATED AS MOOT.  Additionally, Plaintiff's claims against Quest and the SPCA fail for the same reasons set forth in the August 2016 Order.  See Tooker, 2016 WL 4367956, at *8.

## II.  Rooker Feldman

Guerrera argues that Plaintiff's claims are barred under the Rooker Feldman doctrine.  (Guerrera's Br. at 7-9.)  The Court disagrees.

Pursuant to the Rooker Feldman doctrine, this Court "lack[s] jurisdiction over cases that essentially amount to appeals of state court judgments."  Vossbrinck v. Accredited Home Lenders, Inc., 773 F.3d 423 (2d Cir. 2014).  This doctrine applies where four requirements are met: "(1) the federal-court plaintiff lost in state court; (2) the plaintiff complain[s] of injuries caused by a state court judgment; (3) the plaintiff invite[s] . . . review and rejection of that judgment; and (4) the state judgment was rendered before the district court proceedings commenced."  Id. (internal quotation marks and citation omitted; alterations in original).

While Guerrera discusses the doctrines of Rooker Feldman, res judicata, and collateral estoppel somewhat interchangeably, the Court construes Guerrera's motion as arguing that this action is barred by Rooker Feldman because Plaintiff is essentially trying to appeal the state court judgments entered in the Foreclosure Action as well as what Guerrera refers to as the "Partition Action," the matter of Salvatore Guerrera v. Marie Tooker, et. al., Suffolk County Index Number 10-24429. (Guerrera's Aff., Docket Entry 67-1, ¶¶ 13-22.) The Partition Action involved Guerrera's claims against Plaintiff for: (1) partition of real property located at 144 South Street, Manorville, NY, and 871 Little East Neck Road, West Babylon, NY, and (2) breach of contract regarding an oral agreement in which Guerrera loaned Plaintiff money to satisfy her personal bankruptcy debts and prevent the sale of her home at 1040 Flanders Road, Flanders, NY. (Partition Action Order, Guerrera's Ex. D, Docket Entry 67-9, at 3-10.) The state court found in favor of Guerrera after a bench trial[5] and dismissed Plaintiff's counterclaims.[6] (See generally Partition Action Order.)

---

[5] However, the state court held that Guerrera's claim for unjust enrichment was not viable in light of its determination that Plaintiff and Guerrera entered into an express and implied agreement. (Partition Order at 9.)

[6] Plaintiff's counterclaims are difficult to characterize. However, they appear to relate to Guerrera's alleged failure to remit Plaintiff's share of rental proceeds as well as his

The Court finds that Plaintiff has not invited review or rejection of the respective judgments in the Foreclosure Action and Partition Action.  In the case at bar, Plaintiff is seeking monetary damages for her RICO claims, (see Am. Compl. at 112-13), which, in turn, does not require that the Court review and reject the judgments in these actions.  Thus, Plaintiff's RICO claims are not barred by Rooker Feldman.  See Vossbrinck, 773 F.3d at 427 (liberally construing the pro se complaint to assert fraud claims not barred by Rooker Feldman "because they seek damages from [d]efendants for injuries [the plaintiff] suffered from their alleged fraud, the adjudication of which does not require the federal court to sit in review of the state court judgment"); Toohey v. Portfolio Recovery Assocs., LLC, No. 15-CV-8098, 2016 WL 4473016, at *4 (S.D.N.Y. Aug. 22, 2016) (holding that the plaintiff's Fair Debt Collection Act, RICO, and state law claims were not barred by Rooker Feldman because they "merely seek[ ] damages based on [d]efendants' alleged independent wrongful conduct").

III. RICO Claims

The Court construes the Amended Complaint as asserting RICO claims under 18 U.S.C. Sections 1962(a), (b), and (c), and a

---

failure to follow through with a project to construct affordable housing for homeless veterans.  (Pl.'s Partition Action Counterclaims, Guerrera's Mot. at Ex. D, Docket Entry 67-9, at 34-47.)

RICO conspiracy claim under 18 U.S.C. Section 1962(d).  The Court
will address the Guerrera Affidavit before turning to each
statutory provision in turn.

### A.  Guerrera Affidavit

As addressed above, Plaintiff's Amended Complaint
contains an Affidavit purportedly executed by Guerrera (the
"Guerrera Affidavit").  (Am. Compl. at 114-17.)  Reilly argues
that the Court should disregard the Guerrera Affidavit and strike
it from the Amended Complaint since such affidavit "appears to be
offered for the truth of the matters asserted therein, and not to
simply state a RICO claim."  (Reilly's Br., Docket Entry 66-9, at
9.)  Puzzlingly, Guerrera fails to address or even acknowledge the
existence of this Affidavit.  (See generally Guerrera's Br.;
Guerrera's Reply Br., Docket Entry 77.)  In any event, at the
motion to dismiss stage, the Court does not "assess the
admissibility or weight that should be afforded to evidence."  In
re Palermo, No. 08-CV-7421, 2011 WL 446209, at *5 (S.D.N.Y. Feb. 7,
2011) (internal quotation marks and citation omitted).  Cf. DLJ
Mortg. Cap., Inc. v. Kontogiannis, 726, F. Supp. 2d 225, 235
(E.D.N.Y. 2010) ("whether the statements from other proceedings
[excerpted in the complaint] . . . might constitute inadmissible
hearsay when relied upon for the truth of the matters asserted is
simply irrelevant").  Thus, the Court will consider the Guerrera
Affidavit as part of the Amended Complaint.

B.  Section 1962(a) and (b)

Section 1962(a) prohibits the investment of income obtained from a pattern of racketeering activity in an enterprise. Wood, 2015 WL 1396437, at *8.  "Section 1962(b) prohibits the acquisition or maintenance of an interest in an enterprise through a pattern of racketeering activity."  Id. at *9.  However, the "enterprise" referenced in Sections 1962(a) and (b) "must be something acquired or invested in through illegal activities or by the use of money obtained from illegal activities." USA Certified Merchs., LLC v. Koebel, 262 F. Supp. 2d 319, 330 (S.D.N.Y. 2003). Unlike Section 1962(c), the Section 1962(a) and (b) "enterprise" is "not intended to be the vehicle through which a pattern of racketeering is undertaken, but a separate, legitimate entity purchased through moneys raised through racketeering."  Id. at 330-31.

The Amended Complaint fails to remedy the defects in Plaintiff's claims under Section 1962(a) and (b).  Plaintiff again relies on vague, conclusory allegations that do not plausibly plead the existence of a separate entity purchased with funds raised through racketeering.  (See, e.g., Am. Compl. at 48 ¶ 124 ("DeRosa knowingly invests any proceeds derived from unlawful conduct, or any proceeds derived from the investment or use of those proceeds, in an enterprise").)  Accordingly, Plaintiff's Section 1962(a) and (b) claims are DISMISSED.

C.   Section 1962(c)

To establish a RICO violation, the plaintiff "must plausibly allege that a defendant, through the commission of two or more acts constituting a pattern of racketeering activity, directly or indirectly participated in an enterprise, the activities of which affected interstate or foreign commerce." Lynch v. Amoruso, 232 F. Supp. 3d 460, 465 (S.D.N.Y. 2017) (internal quotation marks and citation omitted). See also 18 U.S.C. § 1962(c) ("[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt").

1. Enterprise

There can be no RICO violation in the absence of an enterprise. BWP Media USA Inc. v. Hollywood Fan Sites, LLC, 69 F. Supp. 3d 342, 359 (S.D.N.Y. 2014). While the outer boundaries of an "enterprise" are not defined by statute, "partnerships, corporations, and other legal entit[ies], as well as associations-in-fact, may be RICO enterprises." Allstate Ins. Co. v. Lyons, 843 F. Supp. 2d 358, 367-68 (E.D.N.Y. 2012) (alteration in original; internal quotation marks omitted). The Court liberally construes the Amended Complaint as alleging that the operative

enterprises are as follows: (1) an association-in-fact enterprise comprised of Guerrera, DeRosa, and Reilly,[7] (2) Quest, (3) SPCA, and (4) IPA Asset Management IV ("IPA"). (Am. Compl. at 3 ¶¶ 6-7; 5 ¶ 19; at 7 ¶ 29; at 11 ¶ 45; at 62 ¶ 173.)

a. Association in Fact

An association-in-fact must have "'both interpersonal relationships and a common interest' to show that an alleged group 'functions as a continuing unit.'" Abbott Labs. v. Adelphia Supply USA, No. 15-CV-5826, 2017 WL 57802, at *3 (E.D.N.Y. Jan. 4, 2017) (quoting Boyle v. U.S., 556 U.S. 938, 946, 129 S. Ct. 2237, 173 L. Ed. 2d 1265 (2009)). In analyzing whether the complaint alleges an association-in-fact enterprise, courts look to "'hierarchy, organization, and activities of the alleged association to determine whether its members functioned as a unit.'" BWP Media, 69 F. Supp. 3d at 360 (quoting Cont'l Petroleum Corp. Inc. v. Corp. Funding Partners, LLC, No. 11-CV-7801, 2012 WL 1231775, at *5 (S.D.N.Y. Apr. 12, 2012)). Merely including a "'conclusory naming of a string of entities'" does not suffice. BWP Media, 69 F. Supp. 3d at 360 (quoting Cont'l Petroleum, 2012 WL 1231775, at *5).

---

[7] As previously noted, the Court declines to deem the non-parties referenced in the Amended Complaint to be defendants in this action. Accordingly, the Court will not consider whether the Amended Complaint plausibly pleads that these non-parties comprise an extensive association-in-fact as alleged by Plaintiff. (See generally Am. Compl. at 22-29 ¶¶ 101-25.)

Particularly, an association-in-fact enterprise must include, at the very least, the following structural features: "(1) a purpose, (2) relationships among those associated with the enterprise, and (3) longevity sufficient to permit these associates to pursue the enterprise's purpose." BWP Media, 69 F. Supp. 3d at 359-60 (internal quotation marks and citation omitted). To satisfy the first structural feature, "the individuals that [compose] the enterprise must share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes." Abbott Labs., 2017 WL 57802, at *3 (internal quotation marks and citation omitted) (alteration in original). To satisfy the second structural feature, the plaintiff must show "the relationships between the various members and their roles in the purported RICO scheme." Id. (internal quotation marks and citation omitted).

The Court liberally construes the Amended Complaint to assert that the common purpose of the association-in-fact enterprise was to steal the Farm from Plaintiff. (Am. Compl. at 8 ¶ 32.) However, Plaintiff has failed to plausibly allege relationships among the Defendants and instead relies on a series of conclusory allegations. (See, e.g., Am. Compl. at 30 ¶ 128 ("each of the Defendants acted as the principal, agent, or representative of each of the other Defendants, and in doing the acts herein alleged, each Defendant was acting within the course

and scope of the agency relationship with each of the other Defendants, and with the permission and ratification of each of the other Defendants"); at 3 ¶ 8 ("All the members share a common purpose all have a continuity of structure and personnel distinct from the pattern of racketeering"); at 57 ¶ 159 ("[t]he association-in-fact enterprise, is an informal entity of individuals that 'function as a continuing unit' engaged in receiving revenue obtained by committing real estate fraud"); at 72 ¶ 235 ("Defendant David DeRosa and Sal Guerrera engaged in a pattern of racketeering with the SPCA up until on or about March 2013."); at 30-32 ¶¶ 131, 136, 140.) Thus, Plaintiff's "failure to plead with any specificity as to the nature of the defendants' common interests and the mechanics of the alleged ongoing working relationship among defendants is fatal" and she has failed to allege an association-in-fact enterprise. Cont'l Petroleum, 2012 WL 1231775, at *6.

Parenthetically, the Guerrera Affidavit belies the notion that Guerrera was involved in an association-in-fact enterprise with his co-defendants. Indeed, the Guerrera Affidavit states that DeRosa maintained "complete control" over the Foreclosure Action, Guerrera had no role in the appointment of Reilly as receiver for the Farm, and Guerrera was "unable to control any future misconduct that occurred by Mr. DeRosa and carried out through his agents." (Am. Compl. at 114.)

b.  <u>Legal Entities</u>

As previously noted, the Amended Complaint asserts that Quest, SPCA, and IPA constitute RICO enterprises.  As "any legal entity may qualify as a RICO enterprise," Plaintiff has adequately plead that these entities are "enterprise[s] within the meaning of RICO."  <u>D. Penguin Bros. Ltd. v. City Nat'l Bank</u>, 587 F. App'x 663, 666-67 (2d Cir. 2014) (internal quotation marks and citation omitted).

However, Plaintiff must also allege that Defendants "participat[ed], directly or indirectly," in the conduct of the affairs of the enterprises.  18 U.S.C. § 1962(c).  "[I]n order to participate directly or indirectly, in the conduct of [the] enterprise's affairs, one must have some part in directing those affairs, that is, one must participate in the operation or management of the enterprise itself."  <u>Abbott Labs.</u>, 2017 WL 57802, at *6 (internal quotation marks and citation omitted).  However, "it is not enough to allege that a defendant provided services that were helpful to an enterprise, without alleging facts that, if proved, would demonstrate some degree of control over the enterprise"  <u>Elsevier Inc. v. W.H.P.R., Inc.</u>, 692 F. Supp. 2d 297, 307-08 (S.D.N.Y. 2010).

The Court finds that Plaintiff has failed to plausibly allege that Defendants participated in the conduct of SPCA and IPA.  Plaintiff alleges that "SPCA agents conspired with all

25

defendants in this complaint consummating the [RICO] enterprise and more than two predicate acts in violation of a R[ICO] claim," (Am. Compl. at 72 ¶ 235), but fails to allege that Defendants participated in SPCA's affairs. With respect to IPA, Plaintiff alleges that in 2011 IPA formed a "partnership" and "relationships with the other enterprises [Q]uest [V]entures in the Suffolk crime family," (Am. Compl. at 7 ¶ 30). Plaintiff also asserts that IPA is "one of David DeRosa['s] shell companies" and DeRosa is "affiliated with having some control of" IPA. (Am. Compl. at 21 ¶ 99; at 24 ¶ 106.) These vague allegations do not suffice to plead participation in the operation or control of IPA. See D. Penguin Bros., 587 F. App'x at 667 ("a complaint does not state a RICO claim merely by alleging racketeering and denominating a legal entity a 'RICO enterprise'").

As to Quest, Plaintiff has failed to allege that Reilly or DeRosa directed Quest's affairs. Plaintiff alleges that Reilly was appointed receiver of the Farm, and indicates that he is somehow affiliated with or receiver of Island Property Associates. (Am. Compl. at 21 ¶ 100 ("David Reilly was appointed receiver from Judge Baisley and the arm of the court at the 134-acre farm in Calverton"); at 48 ¶ 122; at 84 ¶¶ 285-86 ("David R[e]illy of Island Property Associates [ ] is overseeing the property during the foreclosure process . . . they claim [Reilly] is the receiver for Island Property Associates . . . .").) Reilly's role as

receiver in the Foreclosure Action and/or his alleged connection to Island Property Associates does not establish that he had some part in directing the affairs of Quest.[8]

Plaintiff alleges that a partnership between DeRosa and Guerrera was established in or about April 2011, (Am. Compl. at 11 ¶ 49), and DeRosa "in the name of Quest committed the crime of larceny by false pretense when he acted with criminal intent to deprive [P]laintiff of her occupancy and ownership of her real and personal properties" and "seize[d] possession under Quest['s] name" as a result of certain misrepresentations, (Am. Compl. at 51 ¶ 136). However, Plaintiff does not allege that DeRosa directed Quest's affairs or exercised some degree of control over Quest.[9] Indeed, Plaintiff's list of the entities DeRosa is affiliated with does not include Quest. (Am. Compl. at 21 ¶ 99 ("[s]ome of the

---

[8] The Court acknowledges that Plaintiff's initial Complaint alleged that Reilly was the receiver of Quest. Tooker, 2016 WL 4367956, at *8. The Amended Complaint does not contain that allegation. In any event, this Court previously held, in relevant part, that notwithstanding Reilly's alleged role as receiver for Quest, the Complaint failed to allege that he had any role in directing Quest's affairs. Id. While the Amended Complaint contains additional allegations regarding Reilly's actions as receiver, the Court continues to conclude that Plaintiff has not plausibly pled that Reilly had any role in directing Quest's affairs.

[9] While the Guerrera Affidavit states that Guerrera was "pressured and intimidated . . . to agree to accept [DeRosa] as an investor on April 13, 2011," (Am. Compl. at 114), this Affidavit does not indicate what entity DeRosa allegedly invested in.

enterprises that DeRosa is affiliated with having some control of [are] Directional Lending, Island [P]roperties, Peter DeRosa [I]ncorporated, [and IPA]").).

However, as the Court noted in its August 2016 Order, Plaitniff has alleged that Guerrera was President of Quest, (Am. Compl. at 20 ¶ 98), which suffices to plausibly plead that Guerrera exercised control over Quest and was involved in its operation or management.

### 2. Pattern of Racketeering Activity

A pattern of racketeering for RICO purposes requires that at least two racketeering acts be committed within ten years of each other. Price v. Benjamin, No. 13-CV-4426, 2014 WL 3653440, at *5 (E.D.N.Y. Jul. 22, 2014). "The acts of racketeering activity that constitute the pattern must be among the various criminal offenses listed in § 1961(1), and they must be related, and [either] amount to or pose a threat of continuing criminal activity." Id. (alteration in original; internal quotation marks, citations, and emphasis omitted). Section 1961 provides, in relevant part, that racketeering activity includes: "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion. . . which is chargeable under State law and punishable by imprisonment for more than a year," as well as any act indictable under 18 U.S.C. §§ 201 (bribery), 1341 (mail fraud), or 1343 (wire fraud). 18 U.S.C. § 1961(1)(A), (B).

The Court liberally construes the Amended Complaint as alleging that Guerrera engaged in the following predicate acts: extortion, mail fraud, robbery, and bribery.[10]  The Court will address each predicate act in turn.

a. Extortion

The Court finds that Plaintiff has failed to plead a predicate act based on extortion, as her sole allegation regarding this claim is vague and conclusory.  (Am. Compl. at 6 ¶ 21 ("Defendants and their co-conspirators have illegally obtained the farm by using defendant police officers to detain me the plaintiff from entering my home and the protection of over 60 animals through extortion, bribery, tampering with a witness and obstructing justice").)

b. Mail Fraud

As addressed above, where fraud is the predicate act, RICO claims must be pled with particularity pursuant to Fed. R. Civ. P. 9(b).  Wood, 2015 WL 1396437, at *4.  To successfully allege that mail or wire fraud constitutes a predicate act under RICO, the Plaintiff must assert: "(1) the existence of a scheme to defraud, (2) the defendant's knowing or intentional participation in the scheme, and (3) the use of interstate mails or transmission

---

[10] To the extent Plaintiff references harassment and removal of farm animals, those acts are not among the criminal offenses listed in Section 1961(1).  See generally 18 U.S.C. § 1961(1).

facilities in furtherance of the scheme." Est. of Izzo v. Vanguard Funding, LLC, No. 15-CV-7084, 2017 WL 1194464, at *8 (E.D.N.Y. Mar. 30, 2017). Additionally, "[a]llegations failing to specify the time, place, speaker, and sometimes even the content of the alleged misrepresentations, lack the particulars required by Rule 9(b)." Wood, 2015 WL 1396437, at *4 (internal quotation marks and citation omitted). See also Babb v. Capitalsource, Inc., 588 F. App'x 66, 68 (2d Cir. 2015) (to state a RICO claim based on mail or wire fraud, the plaintiff must "specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiffs contend the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements") (internal quotation marks and citation omitted).

Nevertheless, in cases where the plaintiff alleges that the mailings were "simply used in furtherance of a master plan to defraud, the mailings need not contain fraudulent information, and a detailed description of the underlying scheme and the connection therewith of the mail and/or wire communications is sufficient to satisfy Rule 9(b)." Curtis & Assocs. v. Law Offs. of David M. Bushman, Esq., 758 F. Supp. 2d 153, 177 (E.D.N.Y. 2010), aff'd, 443 F. App'x 582 (2d. Cir. 2011) (internal quotation marks and citation omitted). However, in those cases, Rule 9(b) requires "adequate particularity in the body of the complaint [as to] the

specific circumstances constituting the overall fraudulent scheme." Id. (internal quotation marks and citation omitted; alteration in original).

Here, Plaintiff alleges that Guerrera committed mail fraud by making misrepresentations in papers assumedly submitted in the Foreclosure Action, including that "the 4 1/2 acres was encumbered by a mortgage when it was in fact [ ] unencumbered by any mortgage." (Am. Compl. at 45 ¶ 211.) Plaintiff also alleges that Guerrera's filing of the Foreclosure Action itself was fraudulent, (Am. Compl. at 35 ¶ 164), and Guerrera also "use[d] fraudulent documents to claim legal entitlement to the whole 134-acre farm . . . ." (Am. Compl. at 12 ¶ 53). However, the Court finds that Plaintiff fails to plead a predicate act based on mail fraud.

First, Plaintiff's allegations do not satisfy the level of specificity required by Rule 9(b). Plaintiff has not included information regarding the time these alleged misrepresentations were made, their specific content, or the particulars as to how these statements were false or misleading. Plaintiff has also failed to posit specific allegations regarding an overall fraudulent scheme.[11]

_____

[11] To the extent Plaintiff's allegations that Guerrera falsely accused her of crimes and made false statements to the Town police department, (Am. Compl. at 9 ¶¶ 37-38; at 16 ¶ 78; at 40 ¶ 184; at 55 ¶ 152; at 57 ¶ 158), could be construed as

Second, "'litigation activities' pleaded in the Complaint cannot constitute predicate acts for the purposes of RICO." <u>Curtis & Assocs.</u>, 758 F. Supp. 2d at 174. <u>See also</u> <u>Est. of Izzo</u>, 2017 WL 1194464, at *11 ("the service and filing of litigation documents in the [f]oreclosure [a]ction cannot plausibly support a cognizable claim" (collecting cases)). Plaintiff's allegations regarding mail fraud center on Guerrera's commencement of the fraudulent Foreclosure Action and his alleged misrepresentations to the state court during the course of that proceeding. These "allegations based on defendants' allegedly 'frivolous' and 'phony' litigation activities cannot, alone give rise to viable predicate acts of mail [ ] fraud." <u>Curtis & Assocs.</u>, 758 F. Supp. 2d at 176.

c. <u>Robbery</u>

New York Penal Law Section 160.00 provides that:

A person forcibly steals property and commits robbery when, in the course of committing larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of:

1.    Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or

2.    Compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny.

_____

supporting a predicate act of mail or wire fraud, any such claim similarly fails based on the lack of requisite specificity.

N.Y. PENAL LAW § 160.00.  While robbery is considered a predicate act to the extent it is chargeable under state law and punishable by imprisonment for more than one year, see 18 U.S.C. § 1961(1)(A), larceny does not constitute a racketeering activity for RICO purposes, Price, 2014 WL 3653440, at *5 (collecting cases).

The Court finds that the Amended Complaint fails to remedy the defects in Plaintiff's attempt to plead the predicate act of robbery.  Plaintiff's allegations regarding robbery are vague, conclusory, and fail to comply with the more lenient pleading standard under Federal Rule of Civil Procedure 8.  (See Am. Compl. at 44 ¶ 204 ("[a]ll defendants here are alleged to be guilty of article 155 larceny to 155.42 grand larceny . . . [and] willingly and knowingly used armed forces to [r]ob all our personal belongings"); Am. Compl. at 54 ¶ 150 ("[o]n or about April 27 2011 until present Defendants [Guerrera] and DeRosa under NYPL § 165.54 allegedly are guilty of criminal possession of stolen property in the first degree (class B felony) as demonstrated to be a material fact by the land records of title"); Am. Compl. at 88 ¶¶ 296, 299.) Parenthetically, to the extent the Guerrera Affidavit vaguely references alleged theft committed by DeRosa and/or Reilly, it does not allege that Guerrera engaged in anything approaching robbery.  (See generally Am. Compl. at 115-16.)

d. <u>Bribery</u>

Plaintiff also fails to plausibly plead bribery as a predicate act. "In order for bribery to constitute a predicate act under 18 U.S.C. § 1961(1), the acts alleged must violate either 18 U.S.C. § 201 or constitute conduct 'chargeable under State law and punishable by imprisonment for more than one year.'" <u>Lynch</u>, 2017 WL 543232, at *4 (quoting 18 U.S.C. § 1961(1)). 18 U.S.C. Section 201 provides, in relevant part, that an individual will be fined or imprisoned where they:

> [D]irectly or indirectly, corruptly gives, offers or promises anything of value to any public official . . . with intent—
>
> (A)  to influence any official act; or
>
> (B) to influence such public official . . . to commit or aid in committing, or collude in, or allow, any fraud, or make opportunity for the commission of any fraud, on the United States; or
>
> (C) to induce such public official . . . to do or omit to do any act in violation of the lawful duty of such official or person[.]

18 U.S.C. § 201(b).

Additionally, the Amended Complaint references three New York Penal Law ("NYPL") provisions: Section 200.11, 200.20, and 215.00.  (Am. Compl. at 55 ¶¶ 153-54; at 56 ¶ 155.)  NYPL Section 200.00 provides that a person is guilty of bribery in the third degree "when he confers, or offers or agrees to confer, any benefit upon a public servant upon an agreement or understanding that such

34

public servant's vote, opinion, judgment, action, decision or exercise of discretion as a public servant will thereby be influenced." N.Y. PENAL LAW § 200.00. NYPL Section 200.20 provides that a person is guilty of rewarding official misconduct in the second degree "when he knowingly confers, or offers or agrees to confer, any benefit upon a public servant for having violated his duty as a public servant." N.Y. PENAL LAW § 200.20. NYPL Section 215 provides that a person is guilty of bribing a witness "when he confers, or offers or agrees to confer, any benefit upon a witness or a person about to be called as a witness in any action or proceeding upon an agreement or understanding that (a) the testimony of such witness will thereby be influenced, or (b) such witness will absent himself from, or otherwise avoid or seek to avoid appearing or testifying at, such action or proceeding." N.Y. PENAL LAW § 215.00.

First, to the extent Plaintiff alleges that Guerrera bribed her tenants at the Farm, the previously noted federal and state statutes are inapplicable as they address bribery of public officials. (See Am. Compl. at 56 ¶¶ 155-56; at 93 ¶ 404.) Additionally, while Plaintiff references NYPL Section 215.00, Plaintiff does not allege that her tenants were scheduled to testify as witnesses in any proceedings.

Second, Plaintiff's allegations regarding Defendants' bribery of "key public officials" consists of vague statements

and/or apparent quotations from the law. (See Am. Compl. at 13 ¶ 59 ("Defendants covertly bribed and corrupted key public officials to control the illegal acts and have power over the farm and plaintiff with substantial assistance from the Riverhead Police Department"); at 18 ¶ 84 ("Defendants induce[d] key public officials to violate their fiduciary duty to the town . . . they also induced those same key officials to violate the laws to the detriment of the farm and the public and for the benefit of Defendants and the racketeering enterprise"); at 55 ¶ 154 ("Defendants rewarded the police officers with gifts, coffee, food at the horse farm while they were detaining me and threatening my freedom and to take my children").) To the extent Plaintiff names particular public officials who were allegedly bribed--namely, state court Judges Baisley and Spinner--her allegations do not plausibly plead a bribery claim pursuant to any of the previously noted federal or state statutes. (See Am. Compl. at 12 ¶ 53 ("[Guerrera] and David DeRosa use[d] fraudulent documents to claim legal entitlement to the whole 134-acre farm by Judge Baisley who has been accused of taking a bribe by defendant [Guerrera]"); at 17 ¶ 80 ("Baisley took a bribe for the benefit of the enterprise . . . ."); at 38 ¶ 175 ("[Guerrera] work[ed] on [J]udge [S]pinner's personal home repairing windows without pay in exchange for legal help").) Thus, Plaintiff has failed to plead bribery as a predicate act.

Accordingly, Plaintiff's RICO claims are DISMISSED based on her failure to allege a pattern of racketeering activity.[12]

IV.  RICO Conspiracy

The "failure to plead a substantive RICO violation is [ ] fatal to plaintiff[']s RICO conspiracy claim under § 1962(d)." Franzone v. City of N.Y., No. 13-CV-5282, 2015 WL 2139121, at *10 (E.D.N.Y. May 4, 2015) (internal quotation marks and citation omitted).  Accordingly, Plaintiff's claim for RICO conspiracy is DISMISSED.

V.  Leave to Replead

The Court should not dismiss a pro se complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim may be stated."  Perri v. Bloomberg, No. 11-CV-2646, 2012 WL 3307013, at *4 (E.D.N.Y. Aug. 13, 2012) (internal quotation marks and citations omitted).  See also FED. R. CIV. P. 15(a)(2) ("[t]he court should freely give leave [to amend] when justice so requires").  Nevertheless, it is within the Court's discretion to deny leave to amend where there is no indication from a liberal reading of the

---

[12] In light of the Court's determination that the Amended Complaint fails to state a RICO claim, the Court need not address Guerrera's arguments regarding the applicability of the doctrines of res judicata and collateral estoppel. (Guerrera's Br. at 7-17.)

complaint that the plaintiff may state a valid claim.  <u>Perri</u>, 2012 WL 3307013, at *4.

Plaintiff requests the opportunity to file a second amended complaint to "cure [her] procedural defects," and include additional information regarding police reports she is trying to retrieve, bankruptcy fraud pleadings, DeRosa's "over 80 shell dummy companies," and other victims of DeRosa's "criminal activity of stealing people's homes."  (Pl.'s Opp. to Reilly and DeRosa at 53; Pl.'s Opp. to Guerrera at 18-19.)  However, Plaintiff has already been accorded one opportunity to replead her RICO claims and the Court finds that further amendment of the Amended Complaint would be futile.  As set forth more fully above, the Amended Complaint--while five times the length of the original complaint--relies on vague and conclusory statements of purported criminal activity, much of which centers around the actions of non-parties. Thus, notwithstanding Plaintiff's <u>pro se</u> status, the Court declines to grant Plaintiff an additional opportunity to amend, as there is no indication from a liberal reading of the Amended Complaint that Plaintiff may state a valid claim.

Plaintiff also filed a letter motion requesting leave to file a motion to amend or a Second Amended Complaint, (Docket Entry 79), and a request for an evidentiary hearing regarding "new" evidence, (<u>see</u> Docket Entry 83, at 4).  The Court DENIES Plaintiff leave to file a motion to amend or a subsequent Amended Complaint.

Plaintiff's letter motion fails to annex a proposed Second Amended Complaint, identify any new allegations, or indicate how these unspecified amendments will cure the defects in her Amended Complaint. In the absence of a viable pleading or any discernible basis for a hearing, the Court similarly DENIES Plaintiff's request for an evidentiary hearing.

<u>CONCLUSION</u>

For the foregoing reasons, the Town's motion to dismiss (Docket Entry 49) is TERMINATED AS MOOT. The motions to dismiss filed by Reilly, Guerrera, and DeRosa, (Docket Entries 66, 67, and 68) are GRANTED and Plaintiff's Amended Complaint is DISMISSED. Plaintiff's motion for leave to file a motion to amend or Second Amended Complaint (Docket Entry 79) and request for an evidentiary hearing (Docket Entry 83) are DENIED. The Clerk of the Court is directed to mail a copy of this Order to <u>pro se</u> Plaintiff and mark this case CLOSED.

SO ORDERED

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

DATED:     August __11__, 2017
           Central Islip, New York